**In the United States District Court
for the District of Kansas**

————————

Case No. 20-cv-02234-TC

————————

UNITED SPECIALTY INSURANCE COMPANY,

*Plaintiff*

v.

SETHMAR TRANSPORTATION, INC.,

*Defendant*

————————

**MEMORANDUM AND ORDER**

Plaintiff United Specialty Insurance Company (USIC) insures Defendant Sethmar Transportation, Inc., under a commercial general liability policy. USIC filed this suit and a motion for summary judgment, Doc. 29, seeking a declaration that it is not required to defend Sethmar in a personal injury suit arising out of an off-premises motor vehicle accident. Sethmar has filed a cross-motion for summary judgment, Doc. 37, seeking the opposite ruling. For the reasons below, USIC's motion for summary judgment is granted, and Sethmar's is denied.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are

1

irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The filing of cross-motions for summary judgment does not alter this standard. Each motion—and its material facts—must "be treated separately," meaning that "the denial of one does not require the grant of another." *Atl. Richfield Co. v. Farm Credit Bank Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). For each motion, the moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**B**

The facts underlying this suit are straightforward and almost entirely uncontroverted. USIC insures Sethmar through a commercial policy, numbered USA 4158298 and delivered to Sethmar in Kansas. Doc. 37 at 2, ¶¶ 1, 3. Sethmar is a freight broker, meaning it acts as a liaison between shipping parties and motor carriers but does not itself conduct any trucking operations. Doc. 44 at 3–4, ¶¶ 8–13. It provides these brokerage services from its office in Overland Park, Kansas. Doc. 44 at 3, ¶ 11.

The Estate of Joseph A. Savage has sued Sethmar in the United States District Court for the Southern District of West Virginia, No.

19-770, alleging that Sethmar is liable for a West Virginia motor vehicle accident that resulted in Mr. Savage's death.[1] Doc. 37 at 2–3, ¶¶ 4–5 (controverted in irrelevant part). Sethmar tendered the suit to USIC, Doc. 37 at 3, ¶ 7, but USIC contends that no coverage exists for the Estate's claims and that it therefore has no duty to defend, *see* Doc. 35 at ¶¶ 3–4.

The policy provides commercial general liability coverage, subject to several exclusions and limitations shown in its attached endorsements. Doc. 30-1; *see* Doc. 37 at 2, ¶ 2. There is only one endorsement relevant to the dispute here,[2] the Limitation of Coverage to Specified Premises Only (Specified Premises Endorsement). Doc. 30-1 at 38. The policy's general coverage terms apply to bodily injury "that takes place in the 'coverage territory,'" which the policy defines broadly to include "[t]he United States of America (including its territories and possessions)." *Id.* at 11, § I(A)(1)(b) & 23, § V(4). But the Specified Premises Endorsement reads, in pertinent part, as follows:

> This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Form.
>
> * * *
>
> Operation(s):   Insured operates as a freight broker
>
> Premises:        7500 College Blvd[.], Suite 570
>                       Overland Park, KS 66210

---

[1] The Estate is alleging that Sethmar was hired to arrange the transport of certain goods; that Sethmar played a role in selecting either the company or the individual driver who ultimately undertook transportation; that the individual driver was not qualified; and that said driver lost control of his vehicle, resulting in the multi-lane road blockage that caused Mr. Savage's fatal crash. *See* Doc. 30-3.

[2] Sethmar presented argument about two other endorsements, Doc. 37 at 6–8, which USIC initially raised in its pretrial contentions, Doc. 35 at ¶ 4.a. But USIC has not disputed Sethmar's position on those endorsements. Doc. 43 at 1 ("[T]he parties' respective cross-motions for summary judgment turn *solely* upon the Court's construction of the Policy's 'Limitation of Coverage To Specified Premises Only' endorsement.") (emphasis original); *see also id.* at 3 n.3 (reserving right to raise other endorsements in defense to any indemnity obligations but conceding them for purposes of USIC's potential duty to defend). Thus, there is only one endorsement relevant to the pending motions.

This insurance applies to "bodily injury" and "property damage" only if: []The "bodily injury" or "property damage" occurs at the Premises shown in the above Schedule and is caused by one or more of the operations shown in the above Schedule.

\* \* \*

**Coverage for operations at premises <u>not</u> shown above can only be covered if agreed to, in writing, by us as evidenced by endorsement to this policy.**

All other terms and conditions of this policy remain unchanged.

*Id.* at 38. (emphasis original).

USIC filed this suit seeking declaratory relief. The parties now seek interpretation of the Specified Premises Endorsement, to resolve whether USIC has a duty to defend Sethmar in the West Virginia suit. To that end, USIC filed a motion for summary judgment arguing that the provision limits coverage to occurrences that result in bodily injury *at* Sethmar's Overland Park office. Docs. 29 & 30. Sethmar filed a cross-motion arguing that such an interpretation is, at best, an impermissible construction of ambiguous policy language and, at worst, would render the insurance contract illusory. Docs. 36 & 37.

**II**

USIC's motion for summary judgment is granted, and Sethmar's motion is denied. The insurance contract that governs the relationship between USIC and Sethmar is unambiguous, and its plain meaning leaves Sethmar without coverage for the West Virginia accident that caused bodily injury outside of the contract's "specified premises." As a result, USIC does not have a duty to defend or indemnify Sethmar in the West Virginia suit. Nor does this plain reading of the insurance contract render the policy illusory. There are foreseeable situations in which the policy would cover Sethmar, but the West Virginia accident is not one.

**A**

Kansas law governs the parties' dispute.[3] The interpretation of insurance contracts presents a pure question of law. *See First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998); *Fed. Land Bank of Wichita v. Krug*, 856 P.2d 111, 114 (Kan. 1993). And "the primary rule in interpreting written contracts is to ascertain the intent of the parties" based on the plain, general, and common meaning of the words they used within the contract's four corners. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1186–87 (10th Cir. 2018) (applying Kansas law).

**1.** At the outset, Sethmar seeks to avoid the plain language of the insurance policy by invoking the doctrine of ambiguity. Doc. 37 at 9–10. "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992). If an insurance contract is ambiguous, then "the construction most favorable to the insured must prevail." *Id.* But in the absence of ambiguity, courts must "enforce the contract as made." *Id.*

Sethmar appears to argue that the Specified Premises Endorsement creates ambiguity because it conflicts with the policy's general definition of coverage and "coverage territory." Doc. 37 at 9–11. True conflicts among contract provisions can create ambiguity, *Brumley v. Lee*, 963 P.2d 1224, Syl. ¶ 2 (Kan. 1998), but "[c]ourts should not strain to create an ambiguity where, in common sense, there is not one," *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 793 (Kan. 2002). Thus, contracts are to be read holistically and through a commonsense lens, taking into account all incorporated terms and not superficially reading any one component in isolation. *Brumley*, 963 P.2d at Syl. ¶ 3 ("All

---

[3] The parties agree that Kansas law governs. Doc. 35 at ¶ 1.d; Doc. 30 at 3; Doc. 37 at 5; *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding forum state's conflict-of-laws rules apply in diversity jurisdiction cases); *Simms v. Metro. Life Ins. Co.*, 685 P.2d 321, 324 (Kan. Ct. App. 1984) (confirming Kansas conflict regime applies the law of the place of contracting to questions of contract interpretation).

pertinent provisions . . . must be considered together, other than in isolation, and given effect."); *see also Bugg*, 962 P.2d at 519.

Holistic reading is particularly important when an insurance contract contains endorsements. "[T]he endorsement[s] and the policy must be read together." *Thornburg v. Schweitzer*, 240 P.3d 969, 976 (Kan. 2010) (quoting 4 Holmes' Appleman on Ins. § 20.1 at 153–55 (2d ed. 1998)). The entire function of an endorsement is to alter, and not merely clarify, policy language. *Cf. id.* Thus, "[r]eading all provisions together in an attempt to harmonize the terms is particularly appropriate where the preprinted policy form comes to the insured with the various endorsements attached." *Id.*

Sethmar primarily relies on *Evanston Insurance Co. v. Gaddis Co.*, 145 F. Supp. 3d 1140 (S.D. Fla. 2015), to support its argument that the Specified Premises Endorsement creates an ambiguity. There, the insured was a taxi dispatcher, but did not itself drive vehicles or employ drivers. After a dispatched driver raped a passenger, the passenger sued the insured dispatch company, whose insurer sought to enforce a "Designated Premises Exclusion" to avoid coverage. *See id.* at 1149–50. Applying Florida law, the trial court found that the policy, read as a whole, was ambiguous in several respects, including that its exclusion "ma[de] no reference as to which part of the policy it modifies." *Id.* at 1150. That lack of clarity raised several possible constructions, some of which could not be internally reconciled. *See id.*

*Evanston* does not aid Sethmar. Not all premises endorsements create ambiguity. *See, e.g.*, *FYT Supplies, Inc. v. Nautilus Ins. Co.*, No. 20-6844(KM)(JBC), 2021 WL 321443, at *10 (D.N.J. Feb. 1, 2021) (slip op.) (enforcing similar, though not identical, specified premises endorsement); *Essex Ins. Co. v. Wright*, No. 3:10cv314/MCR/CJK, 2012 WL 13024768, at *3 (N.D. Fla. Jan. 30, 2012) (same). Indeed, the Specified Premises Endorsement in Sethmar's policy does not suffer from the same lack of clarity as the *Evanston* endorsement. It expressly identifies, by section and subsection, where the limiting language is to be read, by interlineation, into the policy form. *See* Doc. 30-1 at 38.

Together with the policy language that it modifies, USIC's Specified Premises Endorsement renders coverage as follows: for bodily injury that is caused by an occurrence that takes place in the policy's coverage territory, during the policy period, of which the insured did not know prior to the policy period, *and* that "occurs at the Premises . . . and is caused by one or more of the operations shown in the above

6

Schedule." Doc. 30-1 at 11, 38. All of these conditions of coverage may be read together, in a plain and commonsense fashion. And unlike in *Evanston*, there is a distinction between the occurrences that *cause* the injury (which must take place in the coverage territory and in the course of Sethmar's brokerage operations) and the bodily injury *itself* (which must occur at Sethmar's premises). In short, Sethmar has identified only an intended modification of USIC's form policy—not a true conflict in terms.

**2.** It is undisputed that the accident and resulting death that triggered the West Virginia suit occurred in West Virginia and not at Sethmar's premises in Overland Park, Kansas. Based on the policy's plain language, USIC contends that there is no duty to defend because the Specified Premises Endorsement limits coverage to bodily injury that occurs *at* Sethmar's Overland Park office. Doc. 30 at 10. Sethmar argues that the "only reasonable interpretation is to limit coverage to 'bodily injury' from occurrences *caused by* Sethmar's operations at the premises," regardless of where the injuries occur. Doc. 37 at 8–9 (emphasis added).

The plain language of the policy confirms USIC's interpretation and forecloses Sethmar's contrary reading. The policy extends coverage only for occurrences (i) caused by Sethmar's specified operations (ii) that also result in injuries experienced at Sethmar's Overland Park facility. Doc. 30-1 at 38 (requiring bodily injury to occur at insured's premises); *see also supra* Part II.A.1. This gives each provision of the policy "its plain, ordinary, and popular" meaning without, as Sethmar contends, rendering any term meaningless. *See Wing Mah v. U.S. Fire Ins. Co.*, 545 P.2d 366, Syl. ¶ 2 (Kan. 1976); *cf. FYT Supplies*, 2021 WL 321443 at *7–8 (interpreting similar endorsement consistently and collecting additional cases doing the same); *contra* Doc. 37 at 10. This may not be the interpretation that Sethmar now seeks, but it is the one that its contract requires. *See Raymer*, 840 P.2d at 459.

**B**

Sethmar also argues that enforcing the Specified Premises Endorsement as interpreted above would render the insurance contract illusory. Specifically, Sethmar argues that the nature of its operations (telephone and electronic communications to broker freight), when limited to the specified premises (an office park in Overland Park), gives rise to "no foreseeable circumstances under which Sethmar could collect under the Policy." Doc. 37 at 13. Not so.

Under Kansas law, contracts are illusory when they obligate one party while allowing another "the discretion to determine whether to perform." *CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1200–01 (Kan. Ct. App. 2001) (citing, *e.g.*, Restatement (Second) of Contracts, § 2, cmt. e (1979)). But discretionary performance, which would render a contract illusory, is different than conditional performance, which does not. Black-letter law recognizes that the promise of conditional performance is a valid type of consideration, even when the conditions are unlikely to occur. *See* Restatement (Second) of Contracts, § 2, cmt. e (1981) ("[A] promise may be made even though no duty of performance can arise unless some event occurs. Such a conditional promise is no less a promise because there is a small likelihood that any duty of performance will arise, as in the case of a promise to insure against fire a thoroughly fireproof building.") (internal citation omitted).

Sethmar claims that other jurisdictions have found insurance contracts illusory where coverage "is functionally nonexistent" or where an "insured cannot foresee any circumstances under which he or she would collect under a particular policy provision." Doc. 37 at 13 (quoting *Gower v. Alfa Vision Ins. Corp.*, No. 2015-CA-000804-MR, 2016 WL 6819754, at *3 (Ky. Ct. App. Nov. 18, 2016)). But as USIC correctly argues, there are material and foreseeable circumstances—such as the slip-and-fall of a business invitee—where its policy, as modified by the Specified Premises Endorsement, would extend coverage. *See* Doc. 44 at 11; *see generally* Doc. 30-1. All told, USIC's policy is not illusory under any formulation that Sethmar has proposed or that Kansas law would support.

### III

For the reasons set forth above, USIC's motion for summary judgment, Doc. 29, is GRANTED and Sethmar's cross-motion for summary judgment, Doc. 36, is DENIED.

It is so ordered.

Date:  February 3, 2022               s/ Toby Crouse
                                      Toby Crouse
                                      United States District Judge

8